IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| G.M., a minor, by and through his Guardian ad Litem, KEVIN MARCHESE, an individual, and LYNDI MARCHESE, an individual,<br><br>    Plaintiffs,<br><br>    v.<br><br>DRYCREEK JOINT ELEMENTARY SCHOOL DISTRICT; CALIFORNIA DEPARTMENT OF EDUCATION; and JACK O'CONNELL, in his official capacity as STATE SUPERINTENDENT OF PUBLIC INSTRUCTION FOR THE STATE OF CALIFORNIA,<br><br>    Defendants. | 2:10-cv-0944-GEB-GGH<br><br>ORDER |

Defendant Dry Creek Joint Elementary School District (the "District") moves for an order determining whether reading specialist Suzanne Coutchie ("Coutchie") is part of the "stay-put" placement for Plaintiff G.M. during the pendency of this federal case. (Mot. for Stay-Put ("Mot.") 1:4-6.) The District and Plaintiffs agree that G.M.'s stay-put placement requires 15 hours per week of reading instruction, but disagree about the provider of that instruction as follows: the District contends it may use any qualified instructor to provide the services and does not have fund such services through Coutchie; whereas Plaintiffs contend G.M.'s last agreed-upon placement for reading instruction

services is a private placement with Coutchie, pursuant to the parties' settlement agreement signed in conjunction with G.M.'s last Individualized Educational Program ("IEP"). (Mot. 6:18-22, Opp'n to Mot. 13:21-24.)

Since G.M. is a minor student entitled to education under the Individuals with Disabilities Education Act ("IDEA"), he has a right under the IDEA to "stay-put" in his current educational placement during the pendency of proceedings. 20 U.S.C. § 1415(j); 34 C.F.R. § 300.518(a), (d). Specifically, 20 U.S.C. § 1415(j) of the IDEA prescribes: "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child . . . until all such proceedings have been completed." "The IDEA does not define the phrase 'current educational placement.' Courts have generally interpreted the phrase to mean the placement set forth in the child's last implemented IEP." L.M. v. Capistrano Unified Sch. Dist., 556 F.3d 900, 902 (9th Cir. 2009) (citing Johnson v. Special Educ. Hearing Office, 287 F.3d 1176, 1180 (9th Cir. 2002).

The District argues it is not required to use Coutchie as the provider of services for G.M., since "[t]he IEP does not designate a specific instructor and thus does not require that the District use Coutchie." (Mot. 10:20-21.) Plaintiffs counter that G.M.'s "last agreed to placement included placement and services with the specific independent provider Suzanne Coutchie, as is clearly set for in the Settlement Agreement between [the parties], signed on October 9, 2008." (Opp'n to Mot. 13:21-24, 14:1.) The settlement agreement states: "For the 2008-2009 school year District will contract with Suzanne Coutchie,

2

Educational Therapist/Reading Specialist, to provide fifteen (15) hours per week of direct one-to-one reading intervention services to [G.M.], per the District's standard in-session school calendar for students beginning on the first day of school, August 11, 2008." (Decl. of Gutierrez Ex. A ¶ A.) The IEP contains the "comment": "[G.M.] will receive 15 hours per week of individual instruction following the district's academic calendar from an educational specialist pursuant to the terms of the Settlement Agreement reached between the district and the parents." (Decl. of Gutierrez Ex. B.) The following statement is also in the IEP: "The IEP team will reconvene for the annual review in May 2009 to review [G.M.'s] progress and discuss any concerns. The goal will be to gradually re-integrate [G.M.] into the school setting (Creekview Ranch)." Id.

Neither the settlement agreement nor the IEP support Plaintiffs' position that Coutchie would be G.M.'s reading specialist after the 2008-2009 school year. These documents evince that the parties "never intended" G.M.'s placement with Coutchie "to be anything more than a temporary placement." Verhoeven v. Brunswick Sch. Committee, 207 F.3d 1, 9 (1st Cir. 1999). "Ordering [the District] to fund a private placement [with Coutchie] during the challenge to the IEP is not the type of maintenance of the status quo that section 1415(j) envisions. To the contrary, it would be an extension of this temporary placement to a degree well beyond the parties' intentions at the time of the [October 9, 2008] settlement agreement." Id.

"The parties agreed in the [2008] settlement agreement to temporarily" have Coutchie serve as G.M.'s reading specialist "only through the end of the [2008-2009] school year[.]" Id. Therefore, it

3

cannot be said that Coutchie is G.M.'s "current educational placement" under the "stay-put" provision of IDEA.

"The policy behind section 1415(j) supports an interpretation of 'current educational placement' that excludes temporary placements like [G.M.'s] placement" with Coutchie. Verhoeven, 207 F.3d at 10. "The preservation of the status quo ensures that the student remains in the last placement that the parents and the educational authority agreed to be appropriate." Id. "However, in the case of [G.M.'s] temporary placement [with Coutchie], [the parties] never agreed that [G.M.] would be placed [with Coutchie] beyond [the 2008-2009 school year]." Id. "To the contrary, the parties expressly agreed that [G.M.] would only be placed [with Coutchie] during the [2008-2009] school year." Id. Therefore, to maintain [G.M. with Coutchie] during the pendency of the [Plaintiffs'] challenge would actually change the agreed-upon status quo, not preserve it." Id. "Thus, because a reading of 'current educational placement' that includes the temporary [Coutchie] placement at issue here would thwart the purpose of section 1415(j), [I, as did the First Circuit in Verhoeven,] decline to adopt such a reading." Id. Therefore, neither the settlement agreement nor the last IEP requires the District to use Coutchie's reading instruction services after the 2008-2009 school year.

Nor has it been shown that the District's discontinuance of Coutchie's services is the type of change which constitutes a change in educational placement in contravention of the stay-put provision. The Ninth Circuit stated in N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dept. of Educ., 600 F.3d 1104, 1116 (9th Cir. 2010), the "then-current educational placement" provision in section 1415(j) "means the general educational program of the student." Here, that has not been

changed. See generally Pardini v. Allegheny Intermediate Unit, 420 F.3d 181, 188 (3rd Cir. 2005)("It is important to remember that Congress was concerned with the services and programs offered to handicapped children, not with the vendors supplying them.").

      For the stated reasons, the stay-put provision in 20 U.S.C. § 1415(j) does not require the District to use Coutchie's reading instruction services.

Dated:   December 9, 2010

                                  GARLAND E. BURRELL, JR.
                                  United States District Judge