1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                  FOR THE EASTERN DISTRICT OF CALIFORNIA

7

8   G.M., a minor, by and through      )
    his Guardian ad Litem; KEVIN       )   2:10-cv-00944-GEB-GGH
9   MARCHESE, an individual; and       )
    LYNDI MARCHESE, an individual,     )
10                                      )   ORDER GRANTING MOTION TO
                 Plaintiffs,           )   DISMISS
11                                      )
            v.                          )
12                                      )
    DRYCREEK JOINT ELEMENTARY SCHOOL    )
13  DISTRICT; CALIFORNIA DEPARTMENT     )
    OF EDUCATION; and JACK              )
14  O'CONNELL, in his official          )
    capacity as STATE SUPERINTENDENT    )
15  OF PUBLIC INSTRUCTION FOR THE       )
    STATE OF CALIFORNIA,                )
16                                      )
                 Defendants.           )
17  _____   )

18          Defendants the California Department of Education ("CDE") and

19  Jack O'Connell, State Superintendent of Public Instruction for the State

20  of California (the "Superintendent"), sued herein only in his official

21  capacity, (collectively "Defendants") move for dismissal of Plaintiffs'

22  First Amended Complaint ("FAC") under Federal Rule of Civil Procedure

23  ("Rule") 12(b)(1). Defendants argue under Rule 12(b)(1) that the Court

24  lacks subject matter jurisdiction because Plaintiffs have not pursued

25  administrative remedies against the CDE. Defendants also seek dismissal

26  under Rule 12(b)(6), arguing Plaintiffs' § 1983 claims fail to state a

27  claim. (ECF No. 17.) G.M. and his parents Kevin Marchese and Lyndi

28

                                       1

Marchese (collectively, "Plaintiffs") oppose the motion. (ECF No. 21.) The motion was heard on October 25, 2010.

### I. Legal Standard

#### A. Federal Rule of Civil Procedure Rule 12(b)(1)

"A Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction can take one of two forms." Bean v. McDougal Littell, 538 F. Supp. 2d 1196, 1198 (D. Ariz. 2008). "It can be a 'facial attack,' in which case 'the challenger asserts that the allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction.' Or it can be a 'factual attack,' in which case the challenger asserts that federal jurisdiction does not exist in fact." Id. (citation omitted).

Defendants' Rule 12(b)(1) motion is "a facial attack on . . . subject matter jurisdiction[.]" Doe v. Holy See, 557 F.3d 1066, 1073 (9th Cir. 2009). Therefore, the factual allegations in Plaintiffs' complaint are assumed to be true and all reasonable inferences are drawn therefrom in Plaintiffs' favor. Wolfe v. Strankman, 392 F.3d 358, 362 (9th Cir. 2004). However, the Court is not required to "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). Further, Plaintiffs have the burden of establishing jurisdiction. See Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994).

#### B. Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) dismissal motion tests the legal sufficiency of the claims alleged in a complaint. Novarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) is appropriate only where the complaint either 1) lacks a cognizable legal theory, or 2)

fails to allege "sufficient facts . . . under a cognizable legal theory." <u>Balistreri v. Pacific Police Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988). To avoid dismissal, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 547 (2007).

In deciding a Rule 12(b)(6) motion, the material allegations of the complaint are accepted as true and all reasonable inferences are drawn in favor of the Plaintiffs. <u>See al-Kidd v. Ashcroft</u>, 580 F.3d 949, 956 (9th Cir. 2009). However, conclusory statements and legal conclusions are not entitled to a presumption of truth. <u>See Ashcroft v. Iqbal</u>, --- U.S. ----, 129 S. Ct. 1937, 1949-50 (2009); <u>Twombly</u>, 550 U.S. at 555. "In sum, for a complaint to survive a motion to dismiss, the nonconclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." <u>Moss v. United States Secret Serv.</u>, 572 F.3d 962, 969 (9th Cir. 2009).

## II. Factual Allegations in Plaintiffs' FAC

G.M. is a fourteen year old student who attends Dry Creek Joint Elementary School District (the "District"). (FAC ¶ 33.) G.M. is diagnosed with dyslexia and other learning disabilities and is eligible for, and receiving, special education under the federal Individuals with Disabilities Education Act ("IDEA"). <u>Id.</u> In 2008, G.M.'s parents ("Parents") filed an administrative due process complaint against the District, following which the parties reached a Settlement Agreement. <u>Id.</u> ¶¶ 36-37. Part of the settlement required G.M. "to commence services with an independent provider who specializes in teaching students with dyslexia[.]" <u>Id.</u>  This is addressed in the Settlement Agreement signed by the Parents and the District as follows: "the District agreed to

contract and pay the dyslexia specialist . . . 15 hours a week for 1:1 services[.]" Id. ¶ 38.

Following the settlement, an Individualized Education Program ("IEP") was prepared and signed which "included goals in language arts and math, but . . . reflected no goals or services related to the general education curriculum." Id. G.M. received language services through the outside provider but "math instruction and related services were not provided[.]" Id. ¶ 39. G.M. was to attend Physical Education ("P.E.") at school during last period but problems with the school and the District have arisen in the last year with regard to G.M. attending P.E. Id. ¶¶ 37, 56. "The District did not obtain a contract for or fund the language services for the outside provider as called for in the 10/09/08 Settlement Agreement." Id. ¶ 40. Therefore, Parents have paid "for services so as not to lose them . . . and [the District] only provided partial and inconsistent reimbursement . . . [;] and only provided full reimbursement after [Parents] filed [a] due process [complaint against the District in the State Office of Administrative Hearings ("OAH") on June 11, 2009]." Id. ¶¶ 40, 46.

G.M.'s annual IEP was held on May 28, 2009, but no written offer of Free Appropriate Public Education ("FAPE") was ever given to Parents. Id. ¶¶ 44-45. A second IEP was scheduled for August 5, 2009 but Parents were not given adequate notice and therefore, were unable to attend. Id. ¶ 51. The District held the IEP on August 5, 2009 without Parents "and unilaterally determined Student's program and services[.]" Id. ¶ 52. After giving Parents proper notice, a third IEP was held on August 28, 2009, which all parties attended; the District subsequently offered a FAPE, which Parents rejected. Id. ¶ 57.

///

Parents filed a due process complaint against the District in the OAH on June 11, 2009 "[b]ecause no IEP or written offer of FAPE was forthcoming." Id. ¶ 46. The District filed a due process complaint against Parents in the OAH on July 30, 2009 to obtain an assessment of G.M. by an "'independent' specialist[.]" Id. ¶ 49. "On August 12, 2009, the District amended its July 31, 2009 request for due process (for assessment) to request a finding of FAPE with regard to the program and services offered at the August 5, 2009 IEP, which Student's parents had been unable to attend." Id. ¶ 54. "The District also requested consolidation with the parent's June 11, 2009 due process complaint. This request was granted by [the OAH]." Id.

The OAH held an administrative hearing on the consolidated due process complaints on November 30 and December 1, 2, 8, 9, and 10, 2009. Id. ¶ 60. The administrative law judge issued a decision on February 18, 2010 "finding for the District and concluding that the District had made a valid offer of FAPE at the August 28, 2009 IEP and could assess Student." Id. ¶ 61.

In 2009 and 2010, Parents complained to the CDE about the District under the IDEA's Complaint Resolution Procedure ("CRP"). Id. ¶ 48. The CDE investigated Parents' complaints and "issued multiple findings of state, federal, and regulatory violations by the District[.]" Id. ¶ 58. The CDE issued "Complaint Investigation Reports . . . on September 22, 2009, October 9, 2009, November 6, 2009 and December 8, 2009 which found eight violations of law[.]" Id. ¶ 48. Specifically, the CDE found that the District had failed to do the following: 1) to provide a response to Parents' due process notice within ten days; 2) to convene a resolution session within fifteen days of Parents' due process request; 3) to continue G.M.'s current

educational placement ("stay-put"); 4) to ensure the Parents' right to present information to the IEP team; 5) to ensure the Parents were fully informed; 6) to timely notify the Parents of the IEP meeting; 7) to include required members of the IEP team; and 8) to fund G.M.'s current education placement. Id. ¶ 58.

### III. Plaintiffs' Claims against Defendants

The instant federal lawsuit is against the District and Defendants. Id. ¶¶ 17-19. Plaintiffs allege in the FAC that their "action is brought pursuant to Section 1415(i)(2)(A) of Title 20 of the United States Code [IDEA]", "42 U.S.C. § 1983", and "Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794[.]" Id. ¶¶ 1, 3-4. The FAC lists fourteen claims, six of which are against the CDE and/or the Superintendent. Specifically, claims two, three, four, twelve, thirteen, and fourteen. Id. 26:2-3, 29:27, 31:8, 49:11-12, 51:14, 53:2-3.

It is unclear under which law Plaintiffs are bringing each claim. Plaintiffs allege in these claims that Defendants violated "State and Federal Law Including Section 504[.]" Id. 26:3, 29:28, 31:8, 49:13, 51:14, 53:4. Plaintiffs argue in their opposition to the motion that they allege in the FAC "section 504 claims (specifically the 2nd, 3rd, 4th, 12th, 13th and 14th [claims]) against Defendants . . . arising out of . . . Defendants' failure to substantively enforce Plaintiffs' IDEA entitlements and other legal rights, which deprivation was undertaken in a discriminatory, retaliatory and unlawful manner against a child with a disability." (Opp'n to Mot. to Dismiss ("Opp'n") 2:9-15.) § 1983 is only mentioned in the jurisdiction and venue section of the FAC and in claim five; claim five is only alleged against the District. (FAC ¶¶ 3, 117.)   Plaintiffs argue "[t]hese factual allegations

establish that the State Defendants engaged in a policy or custom (of non-enforcement) that was the moving force behind the deprivation of the Plaintiffs' legal rights[; and, that] [s]uch an adverse policy or custom is redressable in a 1983 claim[.]" (Opp'n 34:20-22.) This argument indicates the six claims against Defendants are brought under § 504 of the Rehabilitation Act, the state laws enacting the IDEA and the IDEA; and, that Plaintiffs' § 1983 suit is for violations of § 504 and the IDEA.

The IDEA requires that states accepting funds under the Act provide disabled children with FAPE. 20 U.S.C. § 1412(a)(1). § 504 of the Rehabilitation Act proscribes disabled individuals from being "excluded from the participation in, . . . denied the benefits of, or . . . subjected to discrimination under any program or activity" that receives federal funds. 29 U.S.C. § 794. The U.S. Department of Education ("U.S. DOE") regulations implementing § 504 include a requirement that "[a] recipient [of federal funds] that operates a public elementary [school] . . . shall provide a free[,] appropriate public education to each qualified handicapped person[.]" 34 C.F.R. § 104.33.

> In sum, the IDEA contains a statutory FAPE provision and allows private causes of action only for prospective relief. Section 504 contains a broadly-worded prohibition on discrimination against, exclusion of and denial of benefits for disabled individuals, under which the U.S. DOE has promulgated regulations containing a FAPE requirement worded somewhat differently from the IDEA FAPE requirement. Section 504 can be privately enforced to provide, in addition to prospective relief, compensatory but not punitive damages for past violations.

Mark H. v. Lemahieu, 513 F.3d 922, 930 (9th Cir. 2008).

Plaintiffs explained at the hearing on Defendants' motion that they are alleging in the instant federal lawsuit that Defendants have a

1  responsibility to supervise the District and to enforce the IDEA, and
2  that Defendants have not fulfilled those duties. This argument indicates
3  that all of Plaintiffs' claims against Defendants are based on the
4  Defendants' alleged failure to supervise the District in a manner that
5  ensured that the District provided G.M. with FAPE.

6        Plaintiffs' supervisory theory of liability is alleged in
7  their second claim as follows: Defendants "willfully, negligently and
8  irresponsibly failed to undertake by deliberate or unreasonable
9  omission, any appropriate and substantive enforcement action against the
10 District's unlawful termination of stay-put[.]" Id. ¶ 79. Plaintiffs
11 also allege Defendants "entered into a conspiracy to deny the Student
12 his rights under IDEA[;]" the "CDE and its Superintendent became aware
13 through the process of receiving complaints from the Plaintiffs . . . ,
14 that the District was serially violating the law with respect to"
15 Plaintiffs; and, the "CDE's failings, omissions and unlawful conduct,
16 and that of the Superintendent[,] served to deny Student his rights
17 under law and otherwise exclude Student from participation or the
18 benefits of a free appropriate public education[.]" Id. ¶¶ 79, 80, 81,
19 87.

20                  **IV. Discussion**

21     **A. Failure to State a Claim**

22        **1. § 1983 Claims**

23       Defendants argue Plaintiffs cannot sue them under § 1983
24 because an agency of a state is not a "person" within the meaning of
25 section 1983. (P. & A. in Supp. of Mot. to Dismiss ("Mot.") 14:17-24.)
26 "Section 1983 provides a federal forum to remedy many deprivations of
27 civil liberties, but it does not provide a federal forum for litigants
28 who seek a remedy against a State [or its agencies] for alleged

deprivations of civil liberties." <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 66 (1989). CDE is an agency of the State of California. Further, the official-capacity suit against the Superintendent "represent[s] . . . another way of pleading an action against [the CDE] of which [the Superintendent is] an officer [and] an agent." <u>Wolfe v. Strankman</u>, 392 F.3d 358, 364-65 (9th Cir. 2004) (citations and internal quotations marks omitted); <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690 n.55 (1978) (stating "official-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent"). Plaintiffs named the Superintendent in his official capacity. Therefore, Plaintiffs' claims against the Superintendent are, in effect, claims against CDE. "However, . . . a state official in his or her official capacity, when sued for injunctive relief, is a person under § 1983, because official-capacity actions for prospective relief are not treated as actions against the State." <u>Wolfe</u>, 392 F.3d at 365 (citations and internal quotations marks omitted).

To the extent that Plaintiffs' official-capacity suit against the Superintendent is for prospective injunctive and/or declaratory relief, the issue remains whether Plaintiffs have alleged an actionable § 1983 official-capacity claim against the Superintendent. § 1983

> provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States. To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution and laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law.

<u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006). "Section 1983 does not alone create substantive rights; rather, [it]

merely provides a mechanism for enforcing individual rights secured elsewhere, i.e., rights independently 'secured by the Constitution and laws' of the United States." <u>Johnson v. City of Detroit</u>, 446 F.3d 614, 618 (6th Cir. 2006) (internal quotation marks omitted).

However, "[a]n alleged violation of federal law may not be vindicated under § 1983 . . . where . . . Congress has foreclosed citizen enforcement in the enactment itself, either explicitly, or implicitly by imbuing it with its own comprehensive remedial scheme." <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1155 (9th Cir. 2002). The Ninth Circuit has held that both the IDEA and § 504 provide a comprehensive remedial scheme, which preclude plaintiffs from bringing a § 1983 claim for violations of those statutes. <u>Id.</u> at 1155-56 (holding § 504 provides a comprehensive remedial scheme, which precludes plaintiffs from bringing a § 1983 claim against state officials in their individual capacity based on § 504); <u>Cherry v. City College of San Francisco</u>, No. C 04-04981 WHA, 2006 WL 6602454, at *12 (N.D. Cal. 2006) (extending the holding in <u>Vinson</u> that § 504 cannot form the basis of a § 1983 official-capacity claims against a state officer); <u>Blanchard v. Morton Sch. Dist.</u>, 509 F.3d 934, 938 (9th Cir. 2007) ("[T]he comprehensive enforcement scheme of the IDEA evidences Congress' intent to preclude a § 1983 claim for the violation of rights under the IDEA.").

For the stated reasons, Plaintiffs' § 1983 claims against the CDE and the Superintendent are dismissed. This dismissal is with prejudice since an amendment "could not possibly cure the deficienc[ies]" in these claims. <u>DeSoto v. Yellow Freight Sys., Inc.</u>, 957 F.2d 655, 658 (9th Cir. 1992).

///

///

## B. Subject Matter Jurisdiction

### 1. Exhaustion Requirement

Defendants also seek dismissal under Rule 12(b)(1), arguing that the Court lacks subject matter jurisdiction over Plaintiffs' claims against them since Plaintiffs have failed to pursue administrative remedies against the CDE. "The IDEA requires . . . that 'before the filing of a civil action . . . [in which] relief [is sought] that is also available under [the IDEA]," ordinarily the claimant must exhaust available administrative remedies. <u>Blanchard v. Morton Sch. Dist.</u>, 420 F.3d 918, 920-21 (9th Cir. 2005). "If a plaintiff is required to exhaust administrative remedies but fails to do so, the federal courts do not have jurisdiction to hear the plaintiff's claim." <u>Id.</u> The exhaustion doctrine embodies the notion that "agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." <u>McCarthy v. Madigan</u>, 503 U.S. 140, 145 (1992).

> If parents are not satisfied with decisions regarding their child's educational program or with the services provided, they are guaranteed an impartial due process hearing. They must exhaust this procedure prior to filing a civil action. This exhaustion requirement recognizes the traditionally strong state and local interest in education, allows for the exercise of discretion and educational expertise by state agencies, affords full exploration of technical educational issues, furthers development of the factual record and promotes judicial efficiency by giving state and local agencies the first opportunity to correct shortcomings.

<u>Payne v. Peninsula School Dist.</u>, 598 F.3d 1123, 1126 (9th Cir. 2010) (citations and internal quotation marks omitted). The IDEA states that administrative remedies and judicial review applies to "[a]ny State educational agency, State agency, or local educational agency that receives assistance under this subchapter[.]" 20 U.S.C. § 1415(a). The IDEA's exhaustion requirement applies to any civil action brought by a plaintiff under "the Constitution, the Americans with Disabilities Act,

title V of the Rehabilitation Act or other Federal laws protecting the rights of children with disabilities" that "seek[s] relief that is also available under" the IDEA. 20 U.S.C. § 1415 (l).

"The [IDEA's] exhaustion requirement is not . . . a rigid one. Plaintiffs need not seek [an IDEA administrative] due process hearing where resort to the administrative process would either be futile or inadequate. But a party that alleges futility or inadequacy of IDEA administrative procedures bears the burden of proof." <u>Kutasi v. Las Virgenes Unified School Dist.</u>, 494 F.3d 1162, 1168 (9th Cir. 2007) (citations and internal quotation marks omitted). The dispositive question in determining whether exhaustion is required for a particular claim "is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies. If so, exhaustion of those remedies is required." <u>Robb v. Bethel School Dist. No. 403</u>, 308 F.3d 1047, 1050 (9th Cir. 2002).

### 2. Claims Against the CDE

Defendants argue that Plaintiffs claims should be dismissed for failure to exhaust their administrative remedies because the CDE "was never individually named in the underlying request for due process[.]" (Mot. 9:17-18.)

All of Plaintiffs' claims against the CDE allege a failure to supervise the District. Plaintiffs allege in claim two that the District failed to provide G.M. math FAPE and unlawfully terminated G.M.'s stay-put, and that the CDE failed to force the District to comply with the IDEA. <u>Id.</u> ¶¶ 79, 85. Plaintiffs allege in claim three that the CDE "failed to and/or disregarded their obligation to ensure that the Student was provided with math instruction, a math FAPE or otherwise provided special education services pursuant to the settlement

agreement/IEP[.]" Id. ¶ 93. Plaintiffs allege in claim four that "the District interfered with, or frustrated the implementation of, Student's current IEP by failing to make payment for the services agreed to in the settlement agreement IEP of October 2008[.]" Id. ¶ 96. Plaintiffs allege in claim twelve that G.M. was denied access to education and FAPE and that the CDE was "required by law to ensure that Student had full access to a Free Appropriate Public Education . . ." Id. ¶ 191. Plaintiffs allege in claim thirteen that G.M. was denied full access to an education because "the District's unreasonable IEP process . . . deprives and otherwise denies access of the Student of his right to a Free Appropriate Public Education . . . by creating a denial of notice, prior written notice or informed consent." Id. ¶ 201. Plaintiffs allege in claim fourteen that "given the CDE's supervisory responsibility over the District, CDE failed to properly monitor and oversee the District by virtue of the pervasive violations which were permitted to occur under CDE's watch." Id. ¶ 205.

Defendants argue these claims "allege a violation of IDEA or denial of FAPE, however, plaintiffs have not filed a request for due process naming CDE as a responsible public agency." (Mot. 10:21-22.) Defendants argue that Plaintiffs' "allegations raise the question of whether G.M. received the appropriate special education services," and "[r]equiring plaintiffs to exhaust their administrative remedies would allow the complete development of the record on the issues of whether the CDE has failed to address the procedural violations committed by district." Id. 8:18-19, 25-27. Plaintiffs counter they are not required to exhaust an administrative process before they can litigate these claims since the Department already determined "in a CRP that the District was in violation of law," and then did nothing to enforce that

determination. (Opp'n 31:8-15.) Plaintiffs argue that any attempt at exhaustion would be futile since the "OAH is an administrative court of limited jurisdiction which cannot hear or enforce matters requiring the State of California Defendants to do their job." Id. 27:6-8.

Plaintiffs have not shown that it would be futile for them to exhaust their administrative remedies concerning their claims against CDE. The question is whether Plaintiffs "seek relief for injuries that could be redressed to any degree by the IDEA's administrative procedures." Kutasi, 494 F.3d at 1163-64. "If the answer to that question is either yes or unclear, exhaustion is required." Payne, 598 F.3d at 1127.

"Plaintiffs could have sought another due process hearing to force the [District] to obey the [CRP] order[s], or to force the [CDE] to require the [District] to obey the order[s]." M.O. v. Indiana Dep't of Educ., No. 2:07-CV-175-TS, 2008 WL 4056562, at *19 (N.D. Ind. 2008). Plaintiffs could have filed for another due process hearing and "named as respondents both the [District], for failing to obey the [CRP] order[s], and the [CDE], for failing to make the [District] carry out the [CRP] order[s]." Id. "A purpose of requiring exhaustion of remedies is to provide state agencies an opportunity to resolve system defects without unnecessary judicial involvement. It is this opportunity that Plaintiffs denied Defendant [Department of Education] by failing to include the [CDE] in the initial dispute." Whitehead v. School Bd. for Hillsborough County, 932 F. Supp. 1393, 1396 (M.D. Fla. 1996).

Plaintiffs also argue "exhaustion of the CRP may be a substitute for exhaustion of the due process hearing." (Opp'n 7:9-14.) Plaintiffs contend "[g]iven the extensive formal contact and communications Plaintiffs have had with State Defendants regarding the

14

District's ongoing noncompliance, State Defendants have had ample notice and opportunity to take measures contemplated by [Cal. Code Regs. tit. 5,] § 4670[, permitting the CDE to "use any means authorized by law to effect [the District's] compliance"]." Id. 17:12-15. Plaintiffs argue "the State of California [was] aware of the District's failure to implement the Plaintiffs' IDEA rights through the numerous letters and communications with the parents . . . , [and] the CDE itself issued orders and directives to the District ordering it to comply with CDE's orders, which orders have not been complied with even today[.]" Id. 19:24-20:3.

"[D]istrict courts may choose to require or to accept exhaustion of the [complaint resolution procedures] 'as a substitute for exhausting IDEA procedures in challenges to facially invalid policies.'" Porter v. Bd. of Trustees of Manhattan Beach Unif. Sch. Dist., 307 F.3d 1064, 1073 (9th Cir. 2002) (quoting Hoeft v. Tucson Unif. Sch. Dist., 967 F.2d 1298, 1308 (9th Cir. 1992)). When a plaintiff brings a facial challenge to an invalid policy, exhaustion may not be required because "agency expertise and an administrative record are theoretically unnecessary in resolving the issue[.]" Christopher S. v. Stanislaus County Office of Educ., 384 F.3d 1205, 1211 (9th Cir. 2004) (quoting Hoeft, 967 F.2d at 1305). "Exhaustion of a CRP may also render the due process hearing futile where all the educational issues are resolved, leaving only issues for which there is no adequate administrative remedy." Porter, 307 F.3d at 1074. Nevertheless, the Ninth Circuit has held that in such circumstances another purpose of exhaustion is still relevant, "namely, giving the state an opportunity to fix the allegedly unlawful policy." Christopher S., 384 F.3d at 1211.

Plaintiffs' CRP do not constitute proper exhaustion of their formal administrative remedies against the CDE. Plaintiffs are not challenging a blanket decision by the CDE, nor have they alleged that the CDE has engaged in a systematic denial of services. Plaintiffs are challenging the CDE's actions, or lack thereof, with respect to G.M. alone; all of Plaintiffs' supervisory claims allege the District denied G.M. FAPE. Therefore, Plaintiffs' CRP are not a substitute for exhaustion of the IDEA due process procedures in this case.

Therefore, Plaintiffs have not shown why the educational issues about which they complain should not be pursued at an administrative hearing. Accordingly, Plaintiffs' claims against the CDE alleging violation of the IDEA and the state law enacting the IDEA are dismissed.

This exhaustion requirement applies to any federal claim under which a plaintiff is "seeking relief that is also available under the IDEA." Robb v. Bethel Sch. Dist., 308 F.3d 1047, 1049 (9th Cir. 2002) (quoting 20 U.S.C. § 1415(l)). Plaintiffs' § 504 claims against CDE are based on the alleged denial of FAPE and seek, in part, compensatory education. Since part of the § 504 relief Plaintiffs seek is available under the IDEA, Plaintiffs' claims under § 504 are also dismissed.

**3. Claims Against the Superintendent**

Since Plaintiffs' official capacity claims against the Superintendent under the IDEA and § 504 are, in effect, claims against CDE, and are identical to those claims against the CDE, these claims must also be exhausted through an administrative proceeding. Therefore, Plaintiffs claims against the Superintendent under the IDEA and § 504 are dismissed for lack of subject matter jurisdiction.

///

1  **V. CONCLUSION**

2          For the stated reasons, Defendants' motion to dismiss is

3  GRANTED. Plaintiffs' claims against Defendants under § 1983 are

4  dismissed with prejudice since amendment would be futile, and

5  Plaintiffs' claims against Defendants under § 504 and the IDEA are

6  dismissed for lack of subject matter jurisdiction, since Plaintiffs

7  failed to exhaust their administrative remedies.

8  Dated:  December 30, 2010

9

10  _____
    GARLAND E. BURRELL, JR.

11  United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28